IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRANDON L. WYCHE,                          )
                                           )
            Petitioner,                    )
                                           )
      v.                                   )    C.A. No. 21-1620 (MN)
                                           )
BRIAN EMIG, Warden, and ATTORNEY           )
GENERAL OF THE STATE OF                    )
DELAWARE,                                  )
                                           )
            Respondents.[1]                )

## MEMORANDUM OPINION

Brandon L. Wyche – *Pro se* Petitioner.

Andrew J. Vella, Deputy Attorney General, Delaware Department of Justice, Wilmington, DE – Attorney for Respondents.

October 22, 2024
Wilmington, Delaware

---

[1]      Warden Brian Emig has been substituted for former Warden Robert May, an original party to the case.  *See* Fed. R. Civ. P. 25(d).

NOREIKA, U.S. DISTRICT JUDGE

Pending before the Court is a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by Petitioner Brandon L. Wyche ("Petitioner").  (D.I. 3).  The State filed an Answer in opposition, to which Petitioner filed a Reply.  (D.I. 15; D.I. 18).  For the reasons discussed, the Court will dismiss the entire Petition as barred by the one-year limitations period prescribed in 28 U.S.C. § 2244.

I.    **BACKGROUND**

On March 12, 2011, BJ Merrell ("Merrell") shot [Petitioner] in the head during a robbery.  [Petitioner] recovered and Merrell was never charged in the shooting.  On August 30, 2012, Merrell was hanging out in a park, playing dice and basketball with Michael Newkirk, Carlyle Braithwaite, and Michelle Newkirk, Merrell's girlfriend. Earlier that day, [Petitioner] had driven up to Michael with a gun in his lap and told him that Michelle and Merrell had shot him and "they had to go." During the dice game, [Petitioner] and Kevann McCasline arrived at the park in McCasline's car, and [Petitioner] walked over to the group in camouflage shorts and a black t-shirt. Michael Newkirk testified that [Petitioner] and Merrell began fighting and [Petitioner] pulled out a gun. Michelle Newkirk testified that she saw [Petitioner] shoot Merrell, which is consistent with her statement given to police at the scene of the shooting. Merrell died as a result of the gunshot wound. [Petitioner] was apprehended near the scene not long after the shooting.  The police were not able to recover the weapon or any shell casings.

Immediately after the shooting, police tried to locate Braithwaite but were unable to find him until December 2012, when he was arrested on unrelated theft charges. After his arrest, Braithwaite was interviewed by police, who recorded it.  His parents and his attorney were not present, and he was not read his *Miranda* rights before the interview.  He was 17 years old at the time.

The interview lasted for about two hours, and the interviewing officer testified that he did not speak to Braithwaite about the shooting before the interview began. At the beginning of their conversation, Braithwaite noted that he was nervous about discussing the incident because he was worried about his mother and little brother and did not want anything to happen to them. He admitted that he had been hiding out from the police.

> The interviewing officer did not push Braithwaite to speak or make threats. Instead, the officer said that the police would help if Braithwaite or his family was threatened. This seemed to put Braithwaite's concerns to rest, as he then offered, "I'm going to cooperate, don't get me wrong . . . .  That's what I want though." The interviewing officer then asked Braithwaite to "tell [him] the story," and Braithwaite gave a detailed account of the August 30 shooting. He stated he was aware of the threat communicated to Michael by [Petitioner].  He said that he was worried when [Petitioner] arrived at the park, and he wanted to leave. He stated that he saw [Petitioner] approach Merrell, and after the two began talking, [Petitioner] pulled out a gun and Merrell tried to hit him. [Petitioner] then shot Merrell.  Braithwaite also identified [Petitioner] in a photographic line-up as the shooter.

*Wyche v. State*, 113 A.3d 162, 164-65 (Del. 2015).

The police arrested Petitioner in August 2012, and he was subsequently indicted for first degree murder, possession of a firearm during the commission of a felony ("PFDCF"), possession of a firearm by a person prohibited ("PFBPP") and possession of a deadly weapon by a person prohibited ("PDWBPP").  (D.I. 14-1 at Entry No. 1).  Petitioner's case proceeded to a jury trial in June 2013, which ended in a mistrial after the jury was unable to reach a verdict.  (D.I. 14-1 at Entry No. 87).  Petitioner's retrial began in February 2014, and a Delaware Superior Court jury convicted Petitioner of first-degree murder and PFDCF on February 27, 2014.  (D.I. 14-1 at Entry No. 112).  Petitioner appealed, and the Delaware Supreme Court affirmed his convictions on March 26, 2015.  *See Wyche*, 113 A.3d at 167.

On July 28, 2015, Petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") and a motion for appointment of counsel. (D.I. 14-1 at Entry Nos. 135, 136; D.I. 14-10 at 476-484).  The Superior Court appointed counsel to represent Petitioner (D.I. 14-10 at 491); on March 10, 2017, appointed post-conviction counsel filed a motion to withdraw (D.I. 14-11). On July 10, 2017, post-conviction counsel filed Petitioner's points for the Delaware Supreme Court's consideration.  (D.I. 14-1 at Entry No. 152;

D.I. 14-17 at 46-102).  The Superior Court denied Petitioner's Rule 61 motion on March 6, 2018. *See State v. Wyche*, 2018 WL 1151931 (Del. Super. Ct. Mar. 5, 2018).  Petitioner appealed, and the Delaware Supreme Court affirmed the Superior Court's judgment on January 17, 2019. *See Wyche v. State*, 202 A.3d 510 (Table), 2019 WL 259042, at *3 (Del. Jan. 17, 2019).

On September 25, 2018, while his Rule 61 appeal was still pending, Petitioner filed papers in this Court indicating he wished to seek federal habeas relief but wanted the Court to issue a stay. (*See* D.I. 1 in *Wyche v. Metzger*, Civ. A. No. 18-1478-MN).  On October 1, 2018, Petitioner filed a form application for habeas relief under 28 U.S. § 2254.  (*See* D.I. 3 in *Wyche v. Metzger*, Civ. A. No. 18-1570-MN).  In error, the form application was not docketed in Civ. A. No. 18-1478-MN, but rather, was treated as  a new civil case, Civ. A. No. 18-1520-MN.  After discovering the error, the Court issued an Order on December 21, 2018 directing the Clerk to close Civ. A. No. 18-1520-MN and docket the form application in Civ. A. No. 18-1478.  The Court issued an initial AEDPA Order informing Petitioner that a one-year statute of limitations applies to federal habeas proceedings.  (D.I  5 in *Wyche,* Civ. A. No. 18-1520-MN).  On November 12, 2019, Petitioner filed an AEDPA Election Form stating that he wished to withdraw the § 2254 petition without prejudice.  (D.I. 4 in *Wyche*, Civ. A. No. 18-1520).  Given Petitioner's explicit request, the Court issued an Order on December 16, 2019 dismissing his habeas petition without prejudice and closed the case.  (D.I. 6 in *Wyche*, Civ. A. No. 18-1520-MN).

On May 21, 2021, Petitioner filed a letter motion in Civ. A. No. 18-1478-MN, asking the Court to reopen his previously dismissed habeas proceeding so that he could have an opportunity to submit federal habeas claims.  (*See* D.I. 7 in *Wyche*, Civ. A. No. 18-1478-MN).  The Court denied Petitioner's request, explaining that the proper procedure for reinstating a voluntarily dismissed case was to file a new petition in a new civil case.  (*See* D.I. 7 in *Wyche*, Civ. A. No.

18-1478-MN); *see Wyche v. Metzger*, 2021 WL 2403112, at *3 (Del. June 11, 2021). The Court alternatively considered Petitioner's request under Federal Rule of Civil Procedure 60(b), concluding that Petitioner's request was untimely and did not warrant reopening the case under Rule 60(b)(1) or (6). *See Wyche*, 2021 WL 2403112, at *3.

Petitioner filed the instant habeas Petition in November 2021, asserting four grounds for relief: (1) his constitutional rights were violated when two jurors engaged in "*ex parte* contamination*" by improperly discussing the case with family members, and appellate counsel provided ineffective assistance by failing to raise this issue on direct appeal (D.I. 3 at 2); (2) trial counsel provided ineffective assistance by failing to examine the State's expert on a critical issue that would have undermined the credibility of the State's case (*Id.*); (3) trial counsel provided ineffective assistance by failing to request a drug addict instruction for three of the State's witnesses (*Id.*); and (4) the impact of these cumulative errors rendered Petitioner's trial fundamentally unfair (D.I. 3 at 3).

## II.    <u>THE ENTIRE PETITION IS TIME-BARRED</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

>(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA's limitations period is subject to statutory and equitable tolling, which, when applicable, may extend the filing period. *See Holland v. Florida*, 560 U.S. 631, 645 (2010) (equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling). A petitioner may also be excused from failing to comply with the limitations period by making a gateway showing of actual innocence. *See Wallace v. Mahanoy*, 2 F. 4th 133, 151 (3d Cir. 2021) (actual innocence exception).

Petitioner does not assert any facts triggering the application of § 2244(d)(1)(B), (C), or (D). Consequently, the Court concludes that the one-year period of limitations began to run when Petitioner's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner appeals a state court judgment but does not seek certiorari review, the judgment of conviction becomes final, and the statute of limitations begins to run, upon expiration of the ninety-day time period allowed for seeking certiorari review. *See Kapral v. United States*, 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999). In this case, the Superior Court sentenced Petitioner on April 25, 2014, and the Delaware Supreme Court affirmed his convictions and sentence on March 26, 2015. *See Wyche,* 113 A.3d at 167. Since Petitioner did not seek certiorari review of the Delaware Supreme Court's decision, his judgment of conviction became final ninety-days later, on June 24, 2015. Applying the one-year limitations period to that date, Petitioner had until June 24, 2016 to timely file a habeas petition. *See Wilson v. Beard*, 426 F.3d 653, 662-64 (3d Cir. 2005) (Fed. R. Civ. P. 6 (a) applies to AEDPA's limitations period); *Phlipot v. Johnson*, 2015 WL 1906127, at *3 n.3 (D. Del. Apr. 27, 2015) (AEDPA's one-year limitations period is calculated according to the anniversary method, *i.e.*, the limitations period expires on the anniversary of the

date of the triggering event of the limitations, namely, the date of finality). Petitioner, however, did not file the instant Petition until November 16, 2021,[2] approximately five years and five months after that deadline. Thus, the Petition is time-barred and should be dismissed, unless the limitations period can be statutorily or equitably tolled, or Petitioner demonstrates a convincing claim of actual innocence excusing his untimely filing. The Court will discuss each doctrine in turn.

A.    **Statutory Tolling**

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the motion is pending in the state courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 420-24 (3d Cir. 2000). An untimely post-conviction motion is not considered to be properly filed for § 2244(d)(2) purposes. *See Pace v. DiGuglielmo*, 544 U.S. 408, 414, 417 (2005) (explaining that a state postconviction petition rejected by the state court as untimely is not "properly filed" within the meaning of § 2244(d)(2)). The limitations period is also tolled for the time during which an appeal from a post-conviction decision could be filed even if the appeal is not eventually filed. *See Pace*,

---

[2]     Pursuant to the prison mailbox rule, a prisoner's habeas petition is deemed filed the date on which he transmitted the petition to prison authorities for mailing. *See Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003) (the date on which a prisoner transmitted documents to prison authorities for mailing is to be considered the actual filing date). The Third Circuit recently explicitly held that the prison mailbox rule applies to an inmate's electronic filing, such that a *pro se* prisoner's legal documents are considered filed on the date they are tendered to prison staff for electronic filing. *See Webb v. Dep't of Justice*, ___ F.4th ___, 2024 WL 4312737, at *3 (3d Cir. 2024). In this case, the Petition is dated November 18, 2021, but was electronically filed on November 16, 2021. Petitioner does not indicate when he tendered his documents to the prison staff for electronic filing. In these circumstances – and because it benefits Petitioner the most – the Court will assume that the date on the Petition is erroneous and that the Petition was provided to prison authorities on the earlier date. Therefore, the Court views November 16, 2021 as the date of filing.

544 U.S. at 424.  The limitations period, however, is not tolled during the ninety days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion.  *See Stokes v. Dist. Att'y of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001).

The one-year limitations period in this case began to run on June 25, 2015, and ran for 32 days until Petitioner filed a Rule 61 motion on July 28, 2015.  The Superior Court denied the Rule 61 motion on March 6, 2018, and the Delaware Supreme Court affirmed that decision on January 17, 2019.  In these circumstances, the Rule 61 motion tolled the limitations period from July 28, 2015 through January 17, 2019.

The limitations clock started to run again on January 18, 2019 and ran the remaining 333 days without interruption until the limitations period expired on December 17, 2019.[3]  Thus, the Petition is time-barred, unless equitable tolling or the actual innocence equitable exception apply.

### B.     Equitable Tolling

AEDPA's one-year limitations period may be tolled for equitable reasons in rare circumstances when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649-50.  With respect to the diligence inquiry, equitable tolling is not available where the late filing is due to the petitioner's excusable neglect.  *See id.* at 651-52.  As for the extraordinary circumstance requirement, "the relevant inquiry is not whether the circumstance alleged to be extraordinary is unique to the petitioner, but how severe an obstacle it

---

[3]     Petitioner's 2018 habeas petition that the Court dismissed at his request on December 16, 2019 does not statutorily toll the limitations period because it is not an "application for State post-conviction or other collateral review within the meaning of 28 U.S.C. 2244(d)(2)." *Duncan v. Walker*, 533 U.S. 167, 181-182 (2001).

creates with respect to meeting AEDPA's one-year deadline." *Pabon v. Mahanoy*, 654 F.3d 385, 401 (3d Cir. 2011). An extraordinary circumstance will only warrant equitable tolling if there is "a causal connection, or nexus, between the extraordinary circumstance [] and the petitioner's failure to file a timely federal petition." *Ross v. Varano*, 712 F.3d 784, 803 (3d Cir. 2013); *see also Wallace*, 2 F.4th at 144 (reiterating that "the relevant inquiry for purposes of assessing extraordinary circumstances is "how severe an obstacle [the circumstance] creates with respect to meeting AEDPA's one-year deadline."). Moreover, "if the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Brown v. Shannon,* 322 F.3d 768, 773 (3d Cir. 2003). The burden is on the petitioner to prove that he has been reasonably diligent in pursuing his rights. *See Urcinoli v. Cathel,* 546 F.3d 269, 277 (3d Cir. 2008).

Petitioner asserts that he placed a habeas petition in the prison mail system on October 25, 2020, but the prison failed to electronically file it. He states that he filed the instant Petition once he discovered that the October 2020 petition was never filed. (D.I. 18 at 2). Petitioner has included a copy of a library request to e-file a habeas petition in this Court, dated October 25, 2020. (D.I. 4-1 at 11). Given these circumstances, Petitioner contends that the limitations period should be equitably tolled from October 25, 2020 through November 16, 2021.[4] (D.I. 4 at 2; D.I. 18 at 2).

---

[4]    Petitioner actually asserts that the limitations period should be tolled from October 25, 2020 "until he refiled [the petition] on November 25, 2020." (D.I. 18 at 2) Giving Petitioner the benefit of the doubt, the Court presumes Petitioner meant to state that the tolling should extend through November 16, 2021, the date he e-filed the instant Petition.

As previously explained, AEDPA's one-year statute of limitations expired on December 17, 2019. Consequently, even if the prison staff failed to e-file a petition on Petitioner's behalf on October 25, 2020, equitable tolling is unavailable, because this alleged "exceptional circumstance" did not arise until *after* the federal limitations period had already expired. To the extent Petitioner's untimely filing of the Petition was due to his ignorance of the law or the result of his miscalculation of the one-year filing period, such factors do not warrant equitably tolling the limitations period. *See Lewis v. Phelps*, 672 F. Supp. 2d 669, 674 (D. Del. 2009) (holding that Lewis' error in computing AEDPA's computing AEDPA's one-year filing period did not warrant equitable tolling); *Taylor v. Carroll*, 2004 WL 1151552, at *5-6 (D. Del. May 14, 2004).

Additionally, Petitioner has not demonstrated that he exercised reasonable diligence in pursuing his federal habeas claims during the six-year period following the Delaware Supreme Court's affirmance of his convictions. Assuming that Petitioner did provide a petition to prison officials for e-filing in October 2020, he does not explain why he waited until November 2021 to inquire into the status of that petition.

Accordingly, the doctrine of equitable tolling is not available to Petitioner on the facts he has presented.

### C.    Actual Innocence Exception

A credible claim of actual innocence may serve as an "equitable exception" that can overcome the bar of AEDPA's one-year limitations period. *See McQuiggin v. Perkins*, 569 U.S 383, 392 (2013); *Wallace*, 2 F. 4th at 150-151. A petitioner satisfies the actual innocence exception by (1) presenting new, reliable evidence of his innocence; and (2) showing "by a preponderance of the evidence" that "a reasonable juror would have reasonable doubt about his guilt[] in light of the new evidence." *Wallace*, 2 F.4th at 151. In this case, the actual innocence exception is inapplicable because Petitioner does not allege that he is actually innocent.

Accordingly, the Court will dismiss the instant Petition as time-barred.

### III.  CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2);  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling.  *Id.*

The Court has concluded that the Petition is time-barred.  Reasonable jurists would not find these conclusions to be debatable.  Therefore, the Court will not issue a certificate of appealability.

### IV.  CONCLUSION

For the reasons stated, the Court will dismiss the Petition in its entirety as time-barred without holding an evidentiary hearing or issuing a certificate of appealability.  An appropriate Order shall issue.